PETER GORDON, Treasurer of the State of New Jersey, *against* THE NEW BRUNSWICK BANK.

#### ON RULE TO SHEW CAUSE, &c.

1. Under the act of November 2d, 1810, to tax bank stock, although the capital of the bank may have been diminished by losses, yet the tax must be paid on the whole amount of the capital stock subscribed and· paid in. Neither the Treasurer or the Supreme Court could look into the losses of the bank and make proportional allowances upon the tax to be paid.

2. But where the Legislature reduces the shares of the stock two-fifths, it is in effect declaring that the capital is reduced two-fifths, and the bank shall only pay tax on the remaining three-fifths.

This case sufficiently appears in the opinions delivered.

KIRKPATRICK C. J.   This case came before the court on the exchequer side, on a rule entered for that purpose, in vacation, by the Chief Justice.

By the act of November 2, 1810, entitled, " An act to tax banks," the president and directors of the New Brunswick Bank are required to pay into the treasury, on the first day of January, every year, the one-half of one *per cent· upon the whole amount of their capital stock subscribed and paid in.*   In case of neglect or refusal to pay this tax, as it is called, it is made the duty of the treasurer to return to one of the justices of the Supreme Court the amount unpaid, and of such justice to issue a warrant of distress, to be directed to the sheriff of the county, to levy the same of the goods and lands of the bank.

In this case the treasurer had made return to the Chief Justice, stating that the New Brunswick Bank had neglected

to pay as it was required to do, and that the amount of tax due upon sundry defaults, from January 1, 1817, till January 1, 1821, inclusive, was $1753.47.5, that is to say :—

| | | |
|---|---|---|
| January 1, 1817 | $ 21 | 25 |
| January 1, 1818 | 257 | 75 |
| January 1, 1819 | 313 | 75 |
| January 1, 1820 | 356 | 75 |
| January 1, 1821 | 675 | 00 |
| Interest calculated from dates | 128 | 97.5 |
| | $1753 | 47.5 |

Notice of this return having been given to the president and directors of the bank, they resisted the issuing of the warrant of distress, and, in support of their pretentions, exhibited to the Chief Justice, at his chambers, certain receipts, purporting to be receipts of the treasurer, in full of all taxes due from the said bank in the years specified in the said return.

As there appeared from this representation, to be some difficulty in the case, and as the facts alleged by the bank could neither be admitted nor suffered to be proved *ex parte,* a rule was made upon the officers of the bank to shew cause at the bar of the Supreme Court, on the first day of their next term, why a warrant of distress should not issue against them for the sums so in arrear, with the interest thereof: and upon this rule this cause came on to be heard.

It was admitted by the attorney-general for the state, and by the counsel for the bank, that the bank had insisted that, by sundry losses, they had sustained a gradual diminution of their capital from January 1, 1817, till January 1, 1821, inclusive ; that in paying their tax they had paid, from time to time, upon what they called their subsisting capital only, and not upon the capital actually paid in ; and that upon such payments, the treasurer had given them the receipts in full, which had been shewn to the Chief Justice at his chambers.

The bank also read in evidence an act of the legislature passed in November, 1820, which recognizes the fact that the capital stock of the said bank had been reduced by losses sustained, and, therefore, enacts that the shares of the said bank, which had been originally fifty dollars, should be reduced to thirty dollars, and that the directors should make dividends accordingly.

Upon this view of the case, the court expressed their opinion, that as to the taxes of 1817, '18, '19 and '20, the treasurer had no discretion on the subject. He could not, lawfully, look into the losses of the bank, and make proportional allowances upon the tax to be paid. They are to pay upon the amount of the capital *paid in.* Neither can this court, upon the same principle, look into such losses and diminution of capital. The act is peremptory and unyielding; but as to the tax of January 1, 1821, the case is different. The legislature themselves had then recognized the loss, and in effect declared their capital to be reduced two-fifths, and it would be contrary to all equity, as well as to the true spirit of the act itself, to compel them to pay tax upon a capital which they did not possess.

For the deficiency of the tax, therefore, in 1817, '18, '19 and '20, with the interest from the time the same ought to have been paid, the warrant of distress must go, but not for the deficiency of the tax of 1821.

N. B. Upon this opinion being rendered, it is understood that the bank paid the deficiencies adjudged against them, and no further application has been made for a warrant of distress.

ROSSELL, J. Two questions in this case are submitted to the court. 1. That the law taxing the capital of banks is unconstitutional. 2. That as the bank had lost a considerable part of their capital, and had the treasurer's receipt in full for the amount of tax paid on their diminished capital, that the state has no right to recover in this action.

Gordon *v.* The New Brunswick Bank.

The clause in our constitution that provides for the appointment of commissioners of appeal in all cases of taxation, does not, as I conceive, apply to cases like the present. The practice under any law, if long continued, is generally its best interpreter, and we find that this clause, ever since the adoption of the constitution, has been confined to the general tax on real and personal estate where the partiality or ignorance of the assessor might occasion injury to individuals. But assessments of a sum of money on tavern keepers, on attorneys and counsellors, &c., for the privileges they claimed, was a tax from which there was no appeal, although on the former no precise sum was fixed, but left discretionary with the court within certain limits. On banks generally the sum was fixed at one half of one per cent. on their capitals actually paid in. This could not be exceeded or diminished. The bank gave in their capital, the law fixed the amount that capital should pay, what power could commissioners of appeal have in a case like this? certainly none. But this question was settled some years ago, vide *The Treasurer* v. *The Jersey Bank, Pen. Rep.* And the judgment of this court was affirmed in the Court of Errors.

And the second is the only point left for the decision of this court. Is the receipt of the treasurer in full for a sum less than the original tax, conclusive? I think not. This court has no power to equitize, the positive words of the statute is their only guide. The bank returned to the treasurer $250,000, as their capital actually paid in; one-half of one per cent. on that sum they were to pay for the privilege of issuing their notes. The allegation, that this capital was lessened by various losses, did not authorize the treasurer to lessen the sum they had voluntarily paid in. Their application for relief should have been to the legislature. I am, therefore, of opinion, that judgment should go against the bank for the deficiency.

FORD, J., concurred.